IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| DCNC NORTH CAROLINA I, L.L.C. | : | CIVIL ACTIONS |
| and GOOSE MARSH, L.L.C., | : | |
| Appellants, | : | |
| | : | No. 09-3775 |
| v. | : | No. 09-3776 |
| | : | |
| WACHOVIA BANK, N.A., | : | |
| Appellee. | : | |

Norma L. Shapiro, S.J.                                                                  October 5, 2009

MEMORANDUM

This matter is before the court on the emergency motions of debtors Goose Marsh, L.L.C. and DCNC North Carolina I, L.L.C. for stay pending appeal and for expedited consideration. Because the Chapter 11 petitions below were jointly administered, they shall be treated together. The debtors appeal from the Order of the bankruptcy court, entered on July 13, 2009, following a hearing, which dismissed the debtors' Chapter 11 petitions for cause. For the reasons set forth below, the debtors' motions have been denied.

I.   JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction to hear appeals of the final judgments and orders of the bankruptcy court under 28 U.S.C. § 158(a)(1). The decision to dismiss a Chapter 11 petition is committed to the sound discretion of the bankruptcy court and review is for abuse of discretion. Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.), 200 F.3d 154,

159 (3d Cir. 1999). "Mindful that an abuse of discretion exists where the [bankruptcy] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact," this court reviews the findings of fact leading to the decision for clear error and conclusions of law de novo. In re SGL Carbon Corp., 200 F.3d at 159 (internal citations and quotations omitted); accord In re American Pad & Paper Co., 478 F.3d 546, 551 (3d Cir. 2007).

Federal Rule of Bankruptcy Procedure 8005 enables the bankruptcy court and the district court to adapt relief to the unique circumstances of a case by making "any appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." In re Trans World Airlines, Inc., 18 F.3d 208, 212 (3d Cir. 1994). Rule 8005 provides, in pertinent part,

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge . . . pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. . . . The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court. . . .

A party seeking a stay pending appeal must prove, by clear and satisfactory evidence, that (a) it is likely to prevail on the merits of its appeal; (b) it will suffer irreparable injury absent a stay; (c) a stay will not cause substantial harm to other interested parties; and (d) a stay will not harm the public interest. See Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991). In applying this four-part test it should be noted that a stay will be issued only if each of the conditions is satisfied.

After consideration of the record before the court below there was no adequate basis to issue a stay pending disposition of this appeal.

## II. FACTS AND PROCEDURAL HISTORY

DCNC North Carolina I, L.L.C. ("DCNC") and Goose Marsh, L.L.C. ("Goose Marsh") are related but separately organized entities formed for the purpose of purchasing and developing property in North Carolina for residential communities. On April 12, 2006, Goose Marsh entered into a loan with Wachovia Bank, N.A. ("Wachovia") in the amount of $10,000,000 to fund the purchase and initial phases of construction at the Goose Marsh residential project; the loan was secured by the entire Goose Marsh property. On July 11, 2006, DCNC entered into a similar loan with Wachovia in the amount of $5,300,000 to fund the purchase of property and phases one and two of construction at DCNC's residential project at Turtle Creek, North Carolina. This loan was also secured by the entire purchased property. Approximately one year later, Wachovia made an additional loan to DCNC in the amount of $2,700,000 to fund construction of a clubhouse at Turtle Creek.

Lot sales were virtually non-existent at Goose Marsh, and only a single home has been sold. DCNC fared better, with approximately twenty-four lots sold during the initial phases of the project. On or about March 10, 2008, Goose Marsh obtained a $1.5 million modification of its loan, under which it agreed to pay accelerated amounts. The financing arrangements for the Goose Marsh and DCNC properties were "cross-collateralized;" as a result, default under one agreement would trigger a default under the other agreement. DCNC and Goose Marsh asserted

3

it was clear from the loan documents that the company would not be able to repay the initial loan until sales of later phases of construction were completed and sold. DCNC and Goose Marsh alleged that Wachovia knowingly misrepresented that it would continue to finance both projects. During the summer of 2008, DCNC requested that Wachovia extend additional credit to finance the next phase of development for the DCNC property; Wachovia rejected the request, and Goose Marsh found itself without sufficient sales income to remain current on its accelerated obligations. Default was declared on both loans.

DCNC and Goose Marsh first sought relief in Pennsylvania state court where, by complaint filed August 11, 2008, they sought to compel Wachovia to provide the additional funding for the DCNC project. After Wachovia declared default on both entities' loans, the complaint was amended to include a request for injunctive relief to restrain Wachovia from exercising its default remedies. In January of 2009, the Pennsylvania state court denied preliminary injunctive relief, and Wachovia then initiated non-judicial foreclosure proceedings against both properties in North Carolina state court.

In an effort to prevent the impending foreclosure proceedings and reorganize, DCNC and Goose Marsh each filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 16, 2009. The cases were consolidated under No. 09-11825 by order of the bankruptcy court. On March 31, 2009, Wachovia moved for an order dismissing the bankruptcy cases or, in the alternative, for relief from the automatic stay to pursue foreclosure proceedings.

4

The bankruptcy court ordered briefing and an evidentiary hearing on Wachovia's motion. The evidence presented to the bankruptcy court demonstrated that Goose Marsh possessed no assets other than the North Carolina real property (appraised at $9.12 million) and a bank account with deposits of $1,262. Goose Marsh owes $12 million to Wachovia on its loans, and has approximately twenty other unsecured creditors whose claims total $329,647.86. The evidence also demonstrated that DCNC had no assets other than its North Carolina property (appraised at $4.68 million) and a bank account with deposits of $122,664. DCNC owes $5.9 million to Wachovia on its loans, and has approximately forty other unsecured creditors whose claims total $739,688.82.

The debtors' vice-president testified that neither debtor has any employees, and neither has operated nor generated income since the bankruptcy filings. Attempts to secure third party financing had been unsuccessful, and the debtors did not introduce any concrete evidence regarding the status of their negotiations with potential investors or even the terms of refinancing sought. During the bankruptcy court's consideration of Wachovia's motion to dismiss, the debtors' state court complaint was dismissed on the merits on April 23, 2009.

The bankruptcy court determined that both cases were filed in good faith; but that Wachovia had demonstrated that the debtors lacked a reasonable prospect of achieving a confirmed Chapter 11 plan. The bankruptcy court found that, even assuming the proceeds of pending litigation could provide the means to effectuate a Chapter 11 plan, the debtors could not demonstrate a sufficient likelihood of success in the state court action especially in view of

5

the state court's dismissal of their claims on the merits. The bankruptcy court further concluded that debtors' claim of defensive promissory estoppel as a means to reduce Wachovia's claim in the bankruptcy action would be unsuccessful under North Carolina law. The bankruptcy court noted a North Carolina Supreme Court case which "held unequivocally that a post-contractual promise cannot be invoked to reduce the indebtedness on a note absent further consideration and that promissory estoppel cannot substitute for actual consideration." Memorandum and Opinion, p. 29.

Because the inequitable conduct the debtors contend should reduce Wachovia's claims occurred after they were already indebted under the loan agreements, the bankruptcy court decided such conduct would not reduce Wachovia's allowed secured claims. The bankruptcy court also decided that, on the "meager record," the debtors' assertion that they could obtain sufficient financing to reorganize even without reducing Wachovia's claims was unconvincing.

The bankruptcy court granted Wachovia's motion to dismiss both debtors' petitions on July 13, 2009. The bankruptcy court denied the debtors' motion for stay pending appeal without opinion on August 26, 2009. DCNC and Goose Marsh have appealed the dismissal, and move for a stay pending disposition of their appeals.

III.

DCNC and Goose Marsh bear the burden of proving, by clear and satisfactory evidence, that (a) they are likely to prevail on the merits of its appeal; (b) they will suffer irreparable injury absent a stay; (c) a stay will not cause substantial harm to other interested parties; and (d)

a stay will not harm the public interest. See Republic of the Philippines, 949 F.2d at 658.

### A. Likelihood of Success on the Merits of the Appeal.

The party seeking relief bears the burden of demonstrating a likelihood of success on the merits. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428 (2006). DCNC and Goose Marsh assert a number of reasons why the bankruptcy court's dismissal of their Chapter 11 petitions was in error; but they have not demonstrated a likelihood of success on the pending appeal on any of these claims.

#### 1. The Bankruptcy Court's Decision Was Not Premature.

DCNC and Goose Marsh argue that the bankruptcy court erred in dismissing their petitions early in the proceedings and prior to a hearing on their motions to approve the disclosure statement.

Bankruptcy courts should proceed in a deliberate manner when confronted with a motion under Section 1112(b) and should not "precipitously sound the death knell for a Chapter 11 debtor by prematurely converting or dismissing the case." In re Tracey Service Company, Inc., 17 B.R. 405, 409 (Bankr. E.D. Pa. 1982). Nevertheless, if the Chapter 11 case cannot achieve a reorganization within the statutory requirements of the Code, then there is no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their non-bankruptcy law rights. First Jersey Nat'l Bank v. Brown (In re Brown), 951 F.2d 564, 572 (3d Cir. 1991). Rather, a Chapter 11 case "can be dismissed at any time. Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan has expired

... The very purpose of [section] 1112(b) is to cut short this plan and confirmation process where it is pointless." In re Woodbrook Assoc's, 19 F.3d 312, 317 (7th Cir. 1994) (citations omitted).

Here, the debtors filed their Chapter 11 petitions on March 16, 2009; Wachovia filed its motion to dismiss on March 31, 2009. The bankruptcy court held an evidentiary hearing on the motion on May 8, 2009, and accepted post-hearing briefs from all parties. The bankruptcy court also considered the debtors' plan of reorganization, filed on June 15, 2009. The bankruptcy court decided that the debtors were unlikely to effectuate a plan of reorganization within the constraints of the Code. The bankruptcy court did not act precipitously in taking a full two months <u>after</u> the evidentiary hearing to evaluate the debtors' ability to reorganize in light of the evidence presented and the extensive briefing permitted.[1] DCNC and Goose Marsh cannot demonstrate a likelihood of success on the pending appeal on this ground.

2. The Bankruptcy Court Properly Found Cause to Dismiss Under Section 1112(b).

The bankruptcy court did not abuse its discretion in concluding that Wachovia established cause for dismissal on the basis of the debtors' inability to effectuate a plan of reorganization. In 2005, Congress adopted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[2], which significantly strengthened the provisions of Section

---

[1] The bankruptcy court extended consideration of the legal issues presented by the parties beyond the fifteen day decisional requirement of 11 U.S.C. § 1112(b)(3). See Memorandum and Opinion at 2 n. 5.

[2] Pub. L. No. 109-08, 119 Stat. 23 (2005).

1112, and added several factors to the prior list of grounds for dismissal. Section 1112(b) now provides:

> (1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under this chapter . . . if the movant establishes cause.
> (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, [including]--
> > (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> > (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)--
> > > (i) for which there exists a reasonable justification for the act or omission; and
> > > (ii) that will be cured within a reasonable period of time fixed by the court.
> > > . . .
> (4) For purposes of this subsection, the term "cause" includes--
> > (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> > [(B) - (P)].

Section 1112(b) utilizes a burden-shifting approach. Under section 1112(b)(1), the initial burden lies with the movant to establish "cause" for conversion. See 11 U.S.C. § 1112(b)(1).

If the movant establishes "cause", the burden shifts to the debtor to prove it falls within the Section 1112(b)(2) exception for "unusual circumstances." The exception only applies if: "(1) the debtor or a party in interest objects and establishes that there is a reasonable likelihood that a plan will be confirmed within the timeframes set forth in [S]ections 1121(e) and 1129(e), or if these provisions are inapplicable, within a reasonable period of time; (2) the grounds for granting such relief include an act or omission of the debtor for which there exists a reasonable justification for such act or omission; and (3) such act or omission will be cured within a reasonable period of time." See 11 U.S.C. § 1112(b)(2).

      (i)   Applicability of Former Section 1112(b)(2) as Grounds for Cause.

Following the 2005 BAPCPA amendments, Section 1112(b) no longer expressly lists "inability to effectuate a plan" as an example of cause. "Inability to effectuate a plan" remains a viable basis for dismissal because the listed examples of cause are not exhaustive. See In re Brown, 951 F.2d at 572; In re Am. Capital Equip., Inc., 405 B.R. 415, 427 (Bankr. W.D. Pa. 2009). Here, the bankruptcy court reasoned that, "where the debtor is not an operating company[3] as

---

[3] DCNC and Goose Marsh allege that the bankruptcy court's conclusion that the companies were not operating was clearly erroneous. This assertion is unfounded based on the record below and, in particular, the testimony of the debtors' witness, their vice-president Maurice Johnson. Mr. Johnson testified that: (1) no maintenance is being done on the infrastructure / property at Goose Marsh; (2) real estate tax payments for both properties are being passed on to Wachovia for payment; (3) no sales revenues are coming into Goose Marsh; (4) the principals of the companies are personally funding the electric bill, phone bill, and utility bills at DCNC so that the property does not look closed; (5) the debtors do not have any employees; (6) marketing efforts at DCNC have been curtailed to part-time weekends because the marketing company, an external company paid on commission, cannot make sales because the debtors cannot close on houses; and (7) no marketing efforts are ongoing at Goose Marsh. Bankr. Tr. 134-36.

here but merely holds an intangible asset, the loss or diminution prong of [Section] 1112(b)(4)(A) is not relevant and the [former Section] 1112(b)(2) ["inability to effectuate a plan"] remains the applicable grounds for cause." In re 3 Ram, Inc., 343 B.R. 113, 118 n.14 (Bankr. E.D. Pa. 2006).

Consequently, DCNC and Goose Marsh cannot demonstrate a likelihood of success on the pending appeal based on their contention that the bankruptcy court improperly applied section 1112(b)(4)(A).

(ii)   Inability to Effectuate a Plan.

DCNC and Goose Marsh argue that the bankruptcy court erred in concluding that they could not propose a confirmable plan. The debtors assert that they presented a plan which could have been funded by investor contributions and contributions by the companies' principal, Richard Dilsheimer, and confirmed over Wachovia's objection.

In a Chapter 11 case, "inability to effectuate a plan" tests whether it is reasonable to expect that a plan could be confirmed within a reasonable amount of time.  If it appears that a debtor has filed a Chapter 11 case to reorganize, but has no reasonable prospects of confirming a plan, then there is no point in permitting the Chapter 11 case to continue and cause exists to convert or dismiss the case.  In re Brown, 951 F.2d at 572 (requiring the moving party to prove it is unreasonable to expect a plan can be approved, and finding nothing in the record below established that the bank would reject all possible plans).

A common obstacle is an inability to confirm a plan under the requirements of Section 1129. 7 Collier on Bankruptcy, P 1112.04[3], p. 1112-26,-27.  If it becomes reasonably apparent that the debtor cannot obtain the favorable vote of at least one class of impaired claims with respect to any plan that the debtor might reasonably propose, there is no point in incurring the cost of the plan process and cause exists to dismiss or convert the case.  Similarly, if the debtor cannot cram down a dissenting class, cause exists to dismiss or convert the case. See 11 U.S.C. § 1129(a)(8), (a)(10); John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs., 987 F.2d 154, 161 (3d Cir. 1993).

In its motion to dismiss, Wachovia asserted that its secured claims of approximately $18 million substantially dwarfed the collateral value, and could be bifurcated into allowed secured and allowed unsecured claims.  Wachovia claimed that, because the unsecured portion of its claims would allow it to control the class of unsecured creditors, it could unilaterally reject the debtors' plan.  Wachovia also claimed that the debtors would be unable to circumvent its control over the unsecured creditors by creating a "convenience class" because such organization would be barred by Third Circuit precedent.[4]  The bankruptcy court found this argument to have prima facie appeal.

---

[4]     John Hancock Mutual Life Ins. Co. v. Route 37 Business Park Assocs., 987 F.2d 154, 161 (3d Cir. 1993) (prohibiting separate classification of undersecured mortgagee's deficiency claim from the claims of other unsecured creditors of the debtor in order to cram-down, resulting in "no reasonable prospect of confirmation" of the plan); see also In re Swedeland Dev. Group, Inc., 16 F.3d 552, 568 (3d Cir. 1994).

12

In their plan of reorganization, DCNC and Goose Marsh proposed to severely limit the allowed claims of Wachovia, and to fund those reduced claims, and those of their unsecured creditors, with an influx of cash from an unnamed investor, and an investment from the companies' principal ranging from $250,000 to $1,000,000.[5] DCNC and Goose Marsh produced no credible evidence before the bankruptcy court to support their contentions. DCNC and Goose Marsh could not present any reason to believe they could successfully reduce Wachovia's allowed secured claims below the value of the collateral; as a result, the bankruptcy court credited Wachovia's assertion that it would veto any plan that proposed to impair its claims. The debtors' only opportunity for reorganization would require sufficient funding to pay Wachovia's claims in full.

The bankruptcy court concluded, based on the "meager record" offered by the debtors, that DCNC and Goose Marsh had not demonstrated that they could obtain the funds necessary to satisfy Wachovia's undersecured claims. The record below is bereft of evidence regarding the debtors' efforts to secure plan funding of any nature. For example, the debtors' witness testified that in January 2009 the debtors approached Wilmington Trust for takeout financing; the bank declined. Bankr. Tr. 126:6-16. While the debtors claimed to have spoken with approximately fifteen to twenty private investors, they could offer no documentation or letter of intent from any investor, and they were unprepared to discuss the parameters of requested financing.

---

[5] The principal of both debtors, Richard Dilsheimer, proposed to sell his personal residence, which is owned by the entireties with his wife, in order to obtain approximately $1,000,000 to contribute to funding a plan of reorganization. 9/25/2009 Tr. 11-12. The home, though listed, has not yet been sold, nor has an equity loan been obtained. 9/25/2009 Tr. 12.

Bankr. Tr. 127:5-128:7; 129:1-18 (it appeared the debtors were waiting for investors to make them an offer).

The bankruptcy court determination was not clearly erroneous. "[H]owever honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation." In re Brown, 951 F.2d 564, 572 (citing Tennessee Pub. Co. v. American Nat. Bank, 299 U.S. 18, 22 (1936)). "There must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" Id. (citing United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 376 (1988)). See also In re Route 37 Business Park Assocs., 987 F.2d at 157 (motion to lift stay granted because debtor did not possess reasonable possibility of successful reorganization). "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." Id. (citing In re Canal Place Ltd. Partnership, 921 F.2d 569, 577 (5th Cir. 1991)). DCNC and Goose Marsh cannot demonstrate a likelihood of success on the pending appeal.

### 3. Once Cause Was Established, the Bankruptcy Court Was Required to Dismiss or Convert the Cases

The amendments to Section 1112 substantially limit the court's discretion to refuse to dismiss or convert a Chapter 11 case upon a finding of cause. See 11 U.S.C. § 1112(b) as amended by Pub. L. No. 109-08, 119 Stat. 23; In re 3 Ram, Inc., 343 B.R. at 118. Section 1112(b)(1) provides that the court must convert or dismiss the case if the movant establishes cause, unless the court determines that unusual circumstances exist and the court enumerates the circumstances. 7 Collier on Bankruptcy, P 1112.04[3], p. 1112-26,-27. Conversion or dismissal

14

may be disallowed if the debtor specifically identifies "unusual circumstances" establishing that conversion is not in the best interest of creditors. Such circumstances are not defined in the statute. See 11 U.S.C. § 1112(b).

DCNC and Goose Marsh offered no evidence that other creditors would be harmed by "unusual circumstances." It is not unusual in the course of a bankruptcy proceeding that unsecured creditors find themselves disadvantaged in comparison to secured creditors. There was no credible evidence before the bankruptcy court that funding could be obtained to take out Wachovia's substantial claims and provide recovery to unsecured creditors; DCNC and Goose Marsh did not offer the bankruptcy court any evidence that unusual circumstances mitigated against dismissal. DCNC and Goose Marsh cannot establish a likelihood of success on this issue.

### 4. The Bankruptcy Court Did Not Abuse Its Discretion in Concluding that the Debtors Could Not Reduce Wachovia's Allowed Secured Claims

DCNC and Goose Marsh claimed that Wachovia's allowed secured claims would be substantially reduced as a result of either the pending state court action or an objection to proof of claim in the bankruptcy proceeding. The debtors' state court complaint has been dismissed <u>on the merits</u> in the trial court. The bankruptcy court correctly concluded that Wachovia's claims could not be reduced in the bankruptcy proceeding by application of North Carolina law. The bankruptcy court's conclusions were correct.

DCNC and Goose Marsh asserted in their plan that if the bankruptcy court determined that Wachovia had any secured claims, such claims would amount to no more than $5.5 million

as a result of the application of promissory estoppel under North Carolina law. North Carolina courts apply the doctrine of promissory estoppel when it is raised defensively as a shield against a claim by one who, in bringing suit, is reneging on a promise not to do so. See, e.g., JD Benefits, Inc. v. Harrington Wealth Mgmt., Inc., No. 04-01, 2005 WL 1660561 at *7 (M.D.N.C. July 13, 2005); Dealers Supply Co. v. Cheil Indus., 348 F. Supp. 2d 579, 586-87 (M.D.N.C. 2004). North Carolina courts have expressly rejected use of promissory estoppel as an affirmative claim. Dealers Supply Co., 348 F. Supp. 2d at 586-87, 590.

DCNC and Goose Marsh claim Wachovia implicitly waived its rights to two payments under the Goose Marsh loan modification until future funding for DCNC was in place. DCNC and Goose Marsh claim Wachovia waived its rights because Wachovia knew that sales from the initial phases of DCNC would not be enough to repay the full amount of indebtedness, yet repeatedly promised to provide future funding for the DCNC project. The debtors' vice-president Maurice Johnson testified that for the DCNC project, $5.3 million was borrowed to purchase the entire tract of land and to initiate construction of phases one and two. Once construction was complete on phases one and two and all lots sold, Wachovia and DCNC knew that the revenue would not be enough to repay the financing in full. DCNC intended to repay the outstanding amount from sales in future phases – phases which would require additional funding for construction. Bankr. Tr. 109:20-110:11. Wachovia never made any written assurances of future funding. Bankr. Tr. 125:10-17. In approximately March 2008, the debtors discussed with Wachovia that Goose Marsh was not doing well in terms of sales, but the debtors

16

wanted to go forward with DCNC phases three and four to make up for missing the targeted sales on DCNC phases one and two and for the lack of performance at Goose Marsh. Wachovia stated it would permit DCNC to start phase three or four, but not both. Bankr. Tr. 115:5-116:22. Wachovia then rejected DCNC's request for additional financing. The debtors claim they would not have agreed to the first DCNC loan or the Goose Marsh loan modification without Wachovia's promise to fund DCNC's future phases.

DCNC and Goose Marsh have pointed to no evidence establishing that Wachovia promised to refrain from exercising its rights under the existing loan agreements; they state an example of offensive, not defensive, promissory estoppel. The bankruptcy court correctly concluded that, under North Carolina law, "waiver of a right to recover a stated sum of money on a promissory note does need a consideration to support it." Clement v. Clement, 55 S.E.2d 459, 462 (N.C. 1949). DCNC and Goose Marsh demonstrate no likelihood of success on this ground.

### 5. Proper Application of "Best Interest of Creditors and the Estate"

Once cause for relief under Section 1112(b) is established, there is a choice between converting the Chapter 11 case to Chapter 7, or dismissal, "whichever is in the best interest of creditors and the estate." The Code does not define the phrase "best interest of creditors and the estate."

DCNC and Goose Marsh do not argue that consideration of the "best interest of creditors and the estate" mandated conversion to Chapter 7; they rely on this provision to support their

17

argument that dismissal was an abuse of discretion. However, the bankruptcy court having concluded that cause was established, was required to convert or dismiss. DCNC and Goose Marsh have not shown a likelihood of success on this ground.

### B. Likelihood of Irreparable Harm to DCNC and Goose Marsh

A party seeking a stay pending appeal must show not only a likelihood of success on the merits, but also irreparable harm if a stay does not issue. Irreparable harm is an injury that "cannot be redressed by a legal or equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, 882 F.2d 797, 801 (3d Cir. 1989). "An irreparable injury is one that 'is not remote or speculative, but actual and imminent and for which monetary damages cannot adequately compensate.'" Tillery v. Leonard & Sciolla LLP, 437 F. Supp. 2d 312, 329 (E.D. Pa. 2006) (quoting FMC Corp. v. Control Solutions, Inc., 369 F. Supp. 2d 539, 573 (E.D. Pa. 2005)).

DCNC and Goose Marsh established the requisite harm absent a stay, in that a foreclosure hearing for DCNC's property was scheduled for September 30, 2009, and for Goose Marsh's property on October 6, 2009. These proceedings determine whether Wachovia has met its burden of proof regarding the validity of the debt and its right to foreclose. If Wachovia succeeds in separate foreclosure proceedings, the debtors' properties will be subject to sale. The debtors may be able to avail legal remedies in the North Carolina courts to stop the foreclosure proceeding, but DCNC and Goose Marsh have established the likelihood of irreparable harm absent a stay pending disposition of this appeal.

### C. Likelihood of Irreparable Harm to Other Interested Parties

Wachovia has argued that it will be harmed if a stay of foreclosure is granted pending the outcome of this appeal. At the bankruptcy dismissal hearing, Wachovia's appraiser testified that the properties were decreasing in value. Bankr. Tr. 90, 96. The debtors' vice-president admitted that the properties were decreasing in value, contrary to the debtors' assertions in their briefs. Bankr. Tr. 121-25. The bankruptcy court also found that the DCNC property was minimally maintained, and the Goose Marsh property was not being maintained at all. Bankr. Tr. 134-36. Wachovia is already substantially undersecured; further delay is likely to harm Wachovia.

### D. Public Interest

Where the parties have not established that they are likely to prevail, the public interest does not favor a stay that would prevent a creditor from exercising its non-bankruptcy rights in a timely manner.

### IV.

DCNC and Goose Marsh have not established a likelihood of success on appeal. While balance of harm favors the debtors, Wachovia will also suffer harm if a stay were granted, and public interest would not benefit from further delay in this matter. DCNC and Goose Marsh's motions for a stay pending appeal have been denied by Order dated September 30, 2009.